# IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

## CHARLESTON DIVISION

GARY JUDY,

                     Plaintiff,

v.                                    CIVIL ACTION NO.  2:10-cv-01276

JK HARRIS & COMPANY LLC, et al.

                     Defendants.

## MEMORANDUM OPINION AND ORDER

Pending before the Court are Plaintiff Gary Judy's motion to remand [Docket 5] and his motion for attorneys' fees and costs. [Docket 6 at 9-10].   For the reasons that follow, the Court **GRANTS** Plaintiff's motion to remand [Docket 5], **DENIES** his motion for attorneys' fees and costs [Docket 6], and **DISMISSES** this case from the active docket.

### I. BACKGROUND

This dispute arises from certain television and radio advertisements promoting Defendant J.K. Harris's tax representation firm.  Plaintiff, who owed substantial state and federal income taxes, contacted Defendant J.K. Harris  in reliance on its advertisements that claimed that Defendant could settle consumers' tax liabilities with state and federal tax authorities for "pennies on the dollar." (Docket 1-1 at 6.)  On November 18, 2008, Plaintiff entered into a contract with Defendant J.K. Harris to provide certain professional services including preparation of income tax returns and conducting "offer and compromise" negotiations with the Internal Revenue Service and the State of West Virginia.  In his complaint, Plaintiff states that Defendant J.K. Harris estimated it would be

able to settle Plaintiff's federal tax debt for approximately $1,006 and state taxes for $306. (Docket 1-1 at 6.) Defendant Harris required that Plaintiff pay its fees up front.  Defendant Professional Fee Financing Associates, LLC (Defendant PFFA), an alleged affiliate of Defendant J.K. Harris, provided financing of Defendant J.K. Harris' fees charged to Plaintiff.

Plaintiff contends that, although Defendant Harris provided tax return preparation services, it did not contact any federal or state tax authority to negotiate Plaintiff's outstanding tax liabilties. Consequently, the state tax authority garnished his wages, and the IRS threatened to seize his assets. Ultimately, Plaintiff resolved his tax issues with the state and the IRS on his own.  Plaintiff alleges that Defendant J.K. Harris  refused Plaintiff's demands that it return the fees Plaintiff paid. Plaintiff also contends that Defendant PFFA refused to cancel Plaintiff's debt and employed various debt-collectors to obtain payment from Plaintiff.

On September 30, 2010, Plaintiff filed an amended complaint against Defendant in the Circuit Court of Kanawha County, West Virginia. (Docket 1-1.)  In his complaint, Plaintiff claimed he was entitled to monetary damages and declaratory and injunctive relief.  *Id.* at 4.  He asserted four claims: 1) unfair and deceptive acts or practices in violation of the West Virginia Consumer Credit and Protection Act (WVCCPA) [W. Va. Code §46A-1-101, et seq.]; 2) common law fraud and misrepresentation; 3) common law negligence; and 4) unconscionability. (Docket 1-1 at 8-12.) Plaintiff's complaint also alleged class action claims.  *Id.* at 12-13.

Plaintiff's allegations in support of his WVCCPA claim are as follows:

33.   Defendants committed *per se* and general unfair or deceptive acts or practices in the advertising and sale of professional services to consumers—including, but not limited to, the following:

(a)     representing that the services have certain characteristics when they do not have such characteristics in violation of *W. Va. Code* § 46A-6-102(E);

(b)     representing that the services were of a particular quality when the services were not of said quality in violation of *W. Va. Code* §§ 46A-6-104 and 46-6-102(G);

(c)     engaging in conduct which creates a likelihood of confusion or misunderstanding in violation of *W. Va. Code* §§ 46A-6-104 and 46A-6-102(L);

(d)     the act, use or employment of a deception, fraud, misrepresentation, or the concealment, suppression, or omission of any material fact in violation of *W. Va. Code,* §§ 46A-6-104 and 46A-6-102(M);

(e)     advertising that Defendants can resolve consumers' debts to federal and state tax authorities for "pennies on the dollar," or similar representations;

(f)     advertising that Defendants have local offices to handle consumers' files when that is not the case;

(g)     charging a fee for services before the services are performed;

(h)     charging a fee for services not performed;

(i)     refusing to issue a refund of fees for services not performed and refusing to cancel the consumers' debt resulting from such fees;

(j)     representing that consumers will benefit from JKHC's filing of an Offer in Compromise with the IRS when such was not the case and/or when JKHC should have known that the consumers would not benefit from an Offer in Compromise;

(k)     making specific estimates of the amount for which JKHC will settle consumers' tax debts in order to induce consumers to purchase JKHC's services, when JKHC had no realistic basis for such estimates; and

(l)     otherwise violating the injunction issued against Defendants by the Circuit Court of Kanawha County on or about June 12, 2008 in the matter of *State of West Virginia ex rel. Darrell V. McGraw, Jr., Attorney General v. JK Harris & Company, LLC, et al.,* Civil Action Number 08-C-1131.

(Docket 1-1 at 8-10.)

3

On November 3, 2010, Defendants removed the action to federal court and filed their answer to the complaint. (Docket 1 & 2 .)

A.       *Plaintiff's Remand Motion*

On December 3, 2010, Plaintiff filed his motion to remand and supporting memorandum. (Docket 5 & 6.) Plaintiff contends that Defendants failed to carry their burden in establishing federal jurisdiction because they have not proved by a preponderance of the evidence that the amount in controversy jurisdictional requirement is satisfied.  (Docket 6.)  More specifically, Plaintiff states that his claims for compensatory damages are small.  He claims the amount of actual monetary loss is $7,250, and a jury award of significant damages relating to emotional and mental distress, aggravation, anxiety, annoyance and inconvenience is "not very likely." (Docket 6 at 6.)  He claims the maximum penalty for each violation of the WVCCPA is capped at $4,436.33 and, "while it is more likely than not . . . [that Plaintiff] is entitled to one or more awards . . . "it is impossible to predict the total amount that is likely to be awarded, given the broad range of possibilities."  *Id.* Notwithstanding this statement, Plaintiff concludes that it is "still **not likely**" that the penalties would meet the jurisdictional threshold. *Id.*  Likewise, Plaintiff questions whether punitive damages are available for fraud and under the WVCCPA. *Id.*  Because of this uncertainty, Plaintiff argues that the Court, in making its amount in controversy decision, take either the likely statutory penalties or the likely punitive damages into account, but not both.  He contends that in considering the likelihood that a punitive damage award would satisfy the $75,000 limit, the Court should find that the likely ratio of punitive and compensatory damages would be three-to-one, a ratio that yields a maximum amount of $21,750 based on the $7,250 monetary loss.  Plaintiff acknowledges that the

value of injunctive relief is a proper consideration in an amount in controversy calculation, but because the Defendants' are presently restrained by a 2008 West Virginia state court order, they will not incur any new costs by Plaintiff's request for injunctive relief.   As for his request that Defendants implement on-going training, Plaintiff alleges that such injunctive relief is negligible. *Id.* at 8.  Plaintiff states that it is likely that his attorneys' fees will be "at most" $25,000.  *Id.* at 9.

In addition to his argument supporting remand, Plaintiff also moves the Court to award attorneys' fees and costs incurred in connection with Defendants' removal action.  *Id.* at 9-11.

B.    *Defendants' Response to Plaintiff's Remand Motion*

In response to Plaintiff's argument, Defendants do not contest Plaintiff's claim of actual damages of $7,250.  (Docket 7 at 5-6.)  They argue, however, that if Plaintiff were to prevail on his allegations of emotional and mental distress, annoyance, aggravation, anxiety and inconvenience, the amount of damages "would likely exceed the jurisdictional threshold."  *Id.* at 5.  They further argue that West Virginia case precedent demonstrates that the ratio for punitive-to-compensatory damage calculations in some cases has been five-to-one "and even higher."  *Id.* at 8.  Defendants are further concerned with Plaintiff's allegations that they have violated the 2008 state court injunction and with the "possibility" that "the widespread harm alleged can increase a potential punitive award if plaintiff prevails."  *Id.* at 9.  For these reasons, Defendants claim it is more likely than not that the amount in controversy exceeds $75,000.  *Id.*

With the issues fully briefed, this matter is now ripe for review.

## II. LEGAL STANDARDS

Federal courts have original jurisdiction over all actions where the parties are citizens of different states and "the matter in controversy exceeds the sum or value of $75,000, exclusive of

interest and costs." 28 U.S.C. § 1332(a)(1).  Subject to limited exceptions, a defendant may transfer

a case from state court to federal court if the action is one "of which the district courts of the United

States have original jurisdiction." 28 U.S.C.A. § 1441(a).

  "Because removal jurisdiction raises significant federalism concerns, [courts] must strictly

construe removal jurisdiction." *Mulcahey v. Columbia Organic Chem. Co.*, 29 F.3d 148, 151 (4th

Cir. 1994).  All doubts regarding the jurisdiction of this Court to hear a case will be resolved in favor

of remand. *Id. See also Wickline v. Dutch Run-Mays Draft, LLC*, 606 F. Supp. 2d 633 (S.D. W. Va.

2009). "The policy of the statute calls for its strict construction." *Healy v. Ratta*, 292 U.S. 263, 270

(1934); *see also Able v. Upjohn  Co.*, 829 F.2d 1330, 1332 (4th Cir. 1987) (stating that

"congressional desire to restrict removal has been understood to require that doubts about the

propriety of removal be resolved in favor of retained state court jurisdiction").

  The party asserting federal jurisdiction bears the burden of proof.  *Landmark Corp. v. Apogee

Coal Co.*, 945 F. Supp. 932, 935 (S.D. W. Va.1996)(stating that when a defendant removes a case

from state court in which the damages sought are unspecified, the defendant must prove by a

preponderance of the evidence that the value of the matter in controversy exceeds the jurisdictional

amount.") [1]  Under this standard, the party must show that it is "more likely than not" that the

---

[1] The parties agree that the applicable standard of proof is preponderance of the evidence. (Docket 6 & 7.)  The Court notes, however, that no published opinion from the Fourth Circuit has yet articulated the standard of proof required in amount in controversy disputes.  In *Bartnikowski v. NVR, Inc.*, 307 Fed. App'x 730, 734 (4th Cir. 2009), the court reviewed the evidence in that case using the preponderance standard.  The court noted that a "number of our sister circuits have explicitly adopted a preponderance of the evidence standard as the appropriate burden to which removing defendants should be held in proving the amount in controversy where plaintiffs leave damages unspecified. *Id.* at n. 7; se*e, e.g., Smith v. Nationwide Prop. & Cas. Ins. Co.*, 505 F.3d 401, 404-05 (6th Cir. 2007); *Miedema v. Maytag Corp.*, 450 F.3d 1322, 1330 (11th Cir. 2006); *Abrego Abrego v. Dow Chem. Co.*, 443 F.3d 676, 683 (9th Cir. 2006) (per curiam); *Garcia v. Koch Oil Co.*
(continued...)

amount in controversy satisfies the jurisdictional limit. *Id.  See also Tapscott v. MS Dealer Serv. Corp.*, 77 F.3d 1353, 1357 (11th Cir.1996); *Gaus v. Miles, Inc.*, 980 F.2d 564, 567 (9th Cir.1992). To satisfy this burden, a defendant must offer more than a bare allegation that the amount in controversy exceeds $75,000.  *Sayre v. Potts*, 32 F. Supp. 2d 881, 886 (S.D. W. Va. 1999).  An allegation without supporting facts will not satisfy the burden of establishing the amount in controversy. *Id.* (citing *Gaus*, 980 F.2d at 567).  Rather, the defendant seeking removal must supply evidence to support his claim regarding the amount at issue in the case. In so doing, he may rely upon the entirety of the facts and circumstances comprising the plaintiff's damages claim. *Id.*

In evaluating a party's claim to federal jurisdiction, the court must base its decision on the record existing at the time the petition for removal was filed.  *St. Paul Mercury Indem. Co. v. Red Cab*, 303 U.S. 283, 291 (1938). In particular, where the plaintiff's monetary demand is not specified in the complaint, "the amount in controversy is determined by considering the judgment that would be entered if the plaintiff prevailed on the merits of his case as it stands at the time of removal." *Sayre*, 32 F. Supp.2d at 886 (citing *Landmark Corp.*, 945 F. Supp. at 936-37); *see also Hutchens v. Progressive Poloverde Ins. Co.*, 211 F. Supp.2d 788, 791 (S.D. W. Va. 2002) (citation omitted).

In calculating the amount in controversy, the court may consider the entire record and make an independent evaluation of whether the amount in controversy is satisfied. *Grubb v. Jos. A. Bank Clothiers, Inc.*, No. 2:05-cv-0056, 2005 WL 1378721 (S.D. W. Va. June 2, 2005)(citing *White v. J.C. Penny Life Ins. Co.*, 861 F. Supp. 25, 27 (S.D. W. Va. 1994)(citation omitted)).  The amount in controversy, if not specified in the complaint, must be determined on the likely monetary relief that

---

[1](...continued)
*of Tex. Inc.*, 351 F.3d 636, 638-39 (5th Cir. 2003);  *McCord v. Minn. Mut. Life Ins. Co.* (*In re Minn. Mut. Life Ins. Co. Sales Practices Litig.*), 346 F.3d 830, 834 (8th Cir. 2003).

may be granted to the plaintiffs if they succeed on all of their claims asserted in good faith. *See Landmark Corp.*, 945 F. Supp. at 936-37 (S.D. W. Va. 1996); *Mullins v. Harry's Mobile Homes, Inc.*, 861 F. Supp. 22, 24 (S.D. W. Va. 1994)(citing 14A Charles Alan Wright, et al.*, Federal Practice and Procedure* § 3725 at 423-24 (1985)).

## III. DISCUSSION

The citizenship of the parties is not in dispute. The Plaintiff is a West Virginian citizen; Defendants are South Carolina corporations authorized to do business in West Virginia.

Thus, the sole issue presented is whether Defendants have proved by a preponderance of the evidence that the amount in controversy exceeds $75,000.

### A. Compensatory Damages

Defendants do not contest Plaintiff's claim that his actual economic damages are $7,250. The parties are miles apart, however, with respect to their estimates of the likely potential value of Plaintiff's damages arising from Plaintiff's claims of emotional and mental distress, aggravation, anxiety, annoyance and inconvenience. (Docket 1-1 at 8.) With little elaboration, Plaintiff claims "it is not very likely" that a jury could award a "significant amount" for such damages. (Docket 6 at 6.) Meanwhile, Defendants argue that if Plaintiff succeeds in establishing the facts set forth in this complaint, consequential and incidental damages "would likely exceed" the jurisdictional amount. (Docket 7 at 5.)

Defendants rely on *Sloane v. Equifax Info. Servs.*, 510 F.3d 495, 503 (4th Cir. 2007) to buttress their argument. In *Sloane*, a thief stole the plaintiff's identity and ruined her credit rating. *Id.* at 497. She sued Equifax for violations of the Fair Credit Reporting Act [15 U.S.C. § 1681, et seq.] for failing for almost twenty-one months to correct the errors to her credit report. *Id.* A jury

awarded the plaintiff $106,000 for economic losses, $245,000 for mental anguish, humiliation, and emotional distress, and $181,083 in attorneys' fees. *Id.*

In rejecting Equifax's argument that the $245,000 award for non-economic damages was excessive, the Fourth Circuit summarized the eight standard factors used in evaluating the potential excessiveness of an emotional distress claim: 1) the factual context in which the emotional distress arose; 2) the evidence corroborating the testimony of the plaintiff; 3) the nexus between the conduct of the defendant and the emotional distress; 4) the degree of such mental distress; 5) mitigating circumstances, if any; 6) physical injuries suffered due to the emotional distress; 7) medical attention resulting from the emotional duress, psychiatric or psychological treatment; 8) and the loss of income, if any. *Id.* at 503 (citing *Knussman v. Maryland*, 272 F.3d 625, 640 (4th Cir. 2007)). The Fourth Circuit determined that "substantial, if not overwhelming" evidence supported the $245,000 based upon considerable objective verification of her emotional distress for a period of almost two years, namely, repeated denials of credit, insomnia, and serious marital problems. *Id.*

Plaintiff argues that the facts in *Sloane* are readily distinguishable from his case in that the underlying economic damages in *Sloane* totaled $106,000, but his actual monetary loss is just $7,250. (Docket 10 at 4.) Plaintiff further argues that several of the *Sloane* factors are absent from this case, that is, Plaintiff has not made any claims of physical injury, medical and/or psychiatric care. *Id.*

Defendants' reliance on *Sloane* is not persuasive. First, as Plaintiff points out, that case involved a significantly higher economic loss figure than the $7,250 at issue here. Second, Defendants offer little more than conclusory speculation that a jury award for non-economic damages "would likely exceed the jurisdictional threshold." (Docket 7 at 5.) Defendants' argument

that such an award is "more likely than not" is based on the allegation that Plaintiff was "extremely annoyed," feels "victimized" and received an IRS seizure notice. This simply does not satisfy his burden of proving that it is more likely than not that these facts, whether standing alone or aggregated with other considerations, would cause a jury to award damages in excess of $75,000; it is a rare plaintiff who is not extremely annoyed with a defendant or who does not in some way feel victimized by a defendant's conduct. Second, the $245,000 non-economic jury award in the *Sloane* case– the only case Defendants cite– was not quite two and a half times the amount of the plaintiff's $106,000 economic loss. If the Court were to apply this ratio, Plaintiff's non-economic damages would approximate $18,000. That is not a likely ratio where Plaintiff has not alleged that he suffered physical injuries or mental conditions or required medical or psychiatric treatment associated with his non-economic claims or otherwise alleged the similar types of harms (insomnia and serious marital problems) that were present in *Sloane.* Thus, for purposes of determining whether it is more likely than not that the amount in controversy amount is satisfied, the Court finds that the two-and-one-half ratio should not apply in this case. Rather, the Court finds that a likely damage award for consequential, incidental and non-economic damages in this case would be no more than $10,000.

> B.    *Statutory Damages*

In addition to compensatory damages, Plaintiff seeks statutory penalties under the WVCCPA. (Docket 6 at 6.) He asserts that any prediction of the total amount is "impossible . . . given the broad range of possibilities." *Id.* Notwithstanding his inability to provide the Court with some prediction of these damages, Plaintiff is somehow able to conclude that it is "not likely" that these statutory penalties would meet the jurisdictional threshold. *Id.*

While Plaintiff offers little assistance to the Court on this issue, Defendants—who carry the burden of proving jurisdiction—offer even less.  Defendants assert in their response to Plaintiff's remand motion that under West Virginia law Plaintiff "is not likely to be able to recover punitive damages in addition to the WVCCPA penalties."  (Docket 7 at 7.)  They further state that the possibility of punitive damages, however, cannot be eliminated because, in the event Plaintiff did not prevail on his WVCCPA claims but did prevail on his common law claims, punitive damages would be available.  While Defendants address the question of the likely amount of punitive damages, they offer no facts or argument with regard to the WVCCPA penalties.

Under the WVCCPA,  "[i]f a creditor has violated the provisions of this chapter applying to . . . illegal, fraudulent or unconscionable conduct, any prohibited debt collection practice . . . the consumer has a cause of action to recover actual damages and in addition to a right in an action to recover from the person violating this chapter a penalty in an amount determined by the court." W. Va. Code § 46A-5-101(1).  Adjusted for inflation, Plaintiff claims the potential penalty for each violation under the WVCCPA is $4,436.33. (Docket 6 at 6.)  *See* W. Va. Code § 46A-5-106. Defendants do not challenge this calculation.

The WVCCPA is to be construed broadly:

The purpose of the [WVCCPA] is to protect consumers from unfair, illegal, and deceptive acts or practices by providing an avenue of relief for consumers who would otherwise have difficulty proving their case under a more traditional cause of action. As suggested by the court in State v. Custom Pools, 150 Vt. 533, 536, 556 A.2d 72, 74 (1988), "[i]t must be our primary objective to give meaning and effect to this legislative purpose." Where an act is clearly remedial in nature, we must construe the statute liberally so as to furnish and accomplish all the purposes intended.

*State ex rel. McGraw v. Scott Runyan Pontiac-Buick, Inc.*, 461 S.E.2d 516, 523 (W. Va.1995) (citations omitted).

11

In his amended complaint, Plaintiff asserted twelve factual allegations in support of his WVCCPA claims.  (Docket 1-1 at 8-9.)  The assertion of general allegations, however, does not aid the Court's inquiry into whether it is more likely than not that the value of Plaintiff's statutory damages, standing alone or aggregated with other damages, will exceed the jurisdictional limit. Under the WVCCPA, if a single act gives rise to multiple violations of the WVCCPA, only one recovery is available. *In re Machnic*, 271 B.R. 789, 794 (Bankr. S.D. W. Va. 2002)(stating that each act of a debt collector that violates the WVCCPA creates a single cause of action to recover a single penalty and where one act violates two provisions of the WVCCPA, only one statutory penalty is available) (citing *Sturm v. Providian Nat'l Bank*, 242 B.R. 599 (S.D. W. Va. 1999).

Unlike cases where it is clear that a defendant has committed a specific number of separate acts, each of which would constitute a discrete violation of the WVCCPA, here it is impossible to tell from Plaintiff's twelve assertions in his amended complaint (or elsewhere in the record) how many acts, if proved, would give rise to separate penalties under the WVCCPA.[2]  As such, this case is similar to *Adkins v. Wells Fargo Fin. W. Va*, No. 5:09-cv-00405, 2009 WL 1659922(S.D. W. Va June 15, 2009)(remand granted where there is no evidence in the record as to the exact number of WVCCPA violations plaintiff claimed).  It is impossible here to tell from Plaintiff's complaint, or

---

[2]  For example, this Court has granted and denied motions to remand in WVCCPA cases concerning debt collection practices.  In those cases, the calculations are straight-forward because the WVCCPA claims allege specific numbers of harassing phone calls by the defendants with each telephone call constituting a separate act.  *See e.g.*, *Hatcher v. Vanderbilt Mortg. & Fin.*, No. 2:10-cv-00677, 2010 WL 2330392 (S.D. W. Va. June 7, 2010)(remand denied where complaint alleged enough specificity for the Court to determine a reasonable estimate of the number of calls made by debt collector); *Taylor v. Capital One Bank*, , No. 5:09-cv-00576, 2010 WL 424654 (S.D. W. Va. Feb. 4, 2010)(remand denied where complaint indicated that defendant placed more than fifty-three calls in violation of the WVCCPA); *Countryman v. NCO Fin. Sys., Inc.* No. 5:09-cv-00288, 2009 WL 1506720 (S.D. W. Va. May 27, 2009)(remand denied where defendant debt collector alleged to have made twenty-eight calls in violation of the WVCPPA) .

Defendants' notice of removal or answer, or any other part of the record how many television or radio advertisements, or how many telephone calls or items of correspondence, or how many meetings or conversations between the parties involved, as Plaintiff alleges, deceptive or unfair acts or practices. Nothing in the allegations in this particular claim gives the Court any guide to whether there were two, three, nine, or a hundred separate acts by Defendants.[3] As such, it would be an exercise in pure speculation for the Court to attempt to calculate the likely potential statutory damages Plaintiff would win. Where the weighty issue of subject matter jurisdiction is in question, and where the Court must strictly construe its removal jurisdiction, the Court declines to engage in such guesswork. Defendants, who bear the burden of establishing by a preponderance of the evidence that the jurisdictional threshold is satisfied, offer no evidence or proffer or argument on this issue. Consequently, based on the Plaintiff's canny representation that he believes he can recover more than one statutory penalty, but cannot predict a specific number, and because the Court is otherwise without evidence to support a finding that the statutory penalties are likely to exceed the $75,000 threshold, the Court finds that Defendants failed to carry their burden of proving what the likely statutory penalties would be or what impact they would have on the amount in controversy calculation.

---

[3] The Court has reviewed the June 12, 2008, consent judgment and permanent injunction order which restrains Defendants from, *inter alia,* engaging in specified unfair or deceptive business practices. (Docket 18-1.) While this order (which pre-dates the parties contract by five months) indicates that the West Virginia Attorney General's Office received numerous complaints against Defendants that were similar in character to Plaintiff's, the contents of the order does not assist the inquiry into ascertaining the value of Plaintiff's case.

C.      *Punitive Damages*

In addition to compensatory and statutory damages, punitive damages may be included for the purpose of determining the amount in controversy.  14B Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 3702 (4th ed. 2011)("A long line of decisions clearly establishes the proposition that exemplary or punitive damages, when they are permitted to be awarded under the governing substantive law for the claim being asserted by the plaintiff, can be included in determining whether the jurisdictional amount in controversy requirement has been met.").  Claims for punitive damages proffered for the purpose of achieving the jurisdictional amount should be carefully examined."  *Saval v. BL Ltd.*, 710 F.2d 1027, 1033 (4th Cir.1981).

Assuming Plaintiff succeeded on the merits of all his claims, the Court agrees with Plaintiff that Defendants fail to prove that a jury award for punitive damages would likely exceed the jurisdictional limit.  Defendants argue that precedent in West Virginia shows that punitive damages awards at five-to-one "and higher can be warranted even in the absence of an actual intention to harm." (Docket 7 at 8.)  As Plaintiff correctly states, however, this Court has observed that a five-to-one ratio is the outer limit and not the standard.  *Hall v. Cliffs North Am. Coal, LLC,* No. 5:09-cv-00689, 2009 WL 4666484 (S.D. W. Va. Nov. 30, 2009)(citing *TXO Prod. Corp. V. Alliance Res. Corp.*, 419 S.E. 2d 870, 899 (W. Va. 1992)).  Here, the actual monetary damages ($7,250) are relatively low, and while Plaintiff has alleged harm to a class, there is presently no evidence on which to base a finding that the five-to-one ratio is likely to apply.  Defendants' assertion that Plaintiff's claims "can subject Defendants to the possibility of" a punitive damages award in excess of the jurisdictional limit signifies either their lack of confidence that such a result is likely or their misunderstanding of the burden they carry.  The issue here is not what is possible, but rather whether

14

it is "more likely than not" that the $75,000 jurisdictional threshold is crossed.  In sum, the Court finds that in the event the Plaintiff were to be awarded punitive damages, a reasonable estimate of the likely amount he would be awarded—applying a three-to-one ratio—would be no more than $22,000.

       D.     *Attorneys' Fees*

Defendant does not dispute Plaintiff's estimate that attorneys' fees will likely be no more than $25,000.

       E.     *Injunctive Relief Costs*

Defendants contend that the costs associated with any declaratory and injunctive relief would be "clearly significant."  (Docket 7 at 3.)  The Court rejects Defendants' argument for several reasons.  First, the Defendants offer no evidence of what their costs would be.  In fact, they do not even proffer a specific dollar amount estimate.  This fact alone is fatal to this argument.  Once again, it is Defendants' burden to come forward with facts that aid the Court in finding that it is more likely than not that the jurisdictional threshold is met.  Secondly, in 2008 the West Virginia Attorney General's litigation resulted in a declaratory judgment and an injunction against Defendants.  As Plaintiff argues, his requested declaratory and injunctive relief is duplicative of the 2008 state injunction and, thus, Defendants cannot complain of incurring costs directly associated with the filing of this case.  The Court need not decide that issue, however, where Defendants have failed to supply the Court with any evidence of what their past costs have been, or what their future costs would likely be.  Finally, as to the issue of costs associated with on-going training of Defendants' employees, Defendants again offer no facts as to their estimated historical or future costs.  Plaintiff contends that these costs would be negligible because many of the training materials are available

15

free of charge from various internet sources.   (Docket 10 n.1.)  Defendants offer nothing to dispute

that claim.  Thus, for the foregoing reasons, the Court finds that Defendants fail to demonstrate that

it is more likely than not that costs associated with Plaintiff's requests for declaratory and injunctive

relief—whether standing alone or aggregated with other likely damages— would exceed $75,000.

      *F.*    *Summary of Damages*

Based on the foregoing, the Court finds that Plaintiff's potential actual economic damages

would likely be $7,250; that his consequential, incidental and non-economic damages would likely

be no more than $10,000; that Defendants failed to prove any reliable estimate of Plaintiff's statutory

damages, and the record lacks sufficient facts to permit the Court to devise a reliable estimate; that

potential punitive damages, if available, would likely be no more than $22,000; that the maximum

potential attorneys' fees would likely be $25,000; and that Defendants failed to prove any reliable

estimate of the value of declaratory and injunctive relief and the record lacks sufficient facts to

permit the Court to devise a reliable estimate of such a value.

All told, the Court finds that the maximum amount of damages Plaintiff would more likely

than not be awarded is $64,250.  Even assuming for the sake of argument that the record did

demonstrate that Plaintiff was likely to be entitled to some measure of statutory damages under the

WVCCPA and some amount for the value of the requested award for declaratory and injunctive

relief, the Court does not find that it would be likely that, all items considered together, the

jurisdictional threshold would be met.

      *IV.  Plaintiff's Claim for Attorneys' Fees and Costs Incurred*
      *in Connection with Removal of Action from State Court*

Pursuant to 28 U.S.C. § 1447(c), the Court may order Defendants to pay Plaintiff's costs and

expenses, including attorneys' fees, incurred in connection with Defendants' removal of this matter from state court.

The decision to award costs and expenses under 28 U.S.C. § 1447(c) is discretionary.  *Husk v. E.I. Du Pont De Nemours & Co.*, 842 F. Supp. 895, 898-99 (S.D. W. Va. 1994)(awarding reasonable attorneys' fees and costs where the Court found that a cursory examination of the applicable law by the defendant would have revealed that the Court lacked jurisdiction over the case).  Bad faith is not a prerequisite to an award of attorneys' fees under 28 U.S.C. § 1447(c).  *In re Lowe*, 102 F.3d 731, 733 n.2 (4th Cir. 1996).  Notwithstanding Defendants' failure to prove subject matter jurisdiction, the Court does not find that Defendants' decision to remove this case from state court was contrary to well-settled law or otherwise ill-founded; consequently, the Court **DENIES** Plaintiff's motion for fees and costs.

*IV. CONCLUSION*

For the foregoing reasons, the Court **GRANTS** Plaintiff's motion to remand [Docket 5] and **DENIES** his motion for attorneys' fees and costs. [Docket 6 at 9-10.]

**IT IS SO ORDERED**.

The Court **DIRECTS** the Clerk to send a copy of this Order to counsel of record and any unrepresented party.

ENTER:          September 27, 2011

THOMAS E. JOHNSTON
UNITED STATES DISTRICT JUDGE

17